**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR07-2004-MWB |
| vs. | **REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |
| CHARLES SCOTT, | |
| Defendant. | |

_____

On February 28, 2007, the grand jury returned an Indictment charging the defendant Charles Scott with possessing a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). *See* Doc. No. 2, Indictment. On April 5, 2007, Scott filed a motion to suppress and application for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Doc. No. 10. The plaintiff (the "Government") resisted the motion on April 12, 2007. Doc. No. 14.

The trial management order in this case assigned motions to suppress to the undersigned for consideration, the holding of any necessary hearings, and the filing of a report and recommended disposition. Doc. No. 8, § IV.A. Accordingly, the court held a hearing on the motion on May 4, 2007, at which Assistant U.S. Attorney Kandice A. Wilcox represented the Government, and Scott was present in person with his attorney, Assistant Federal Defender JoAnne Lilledahl. The Government offered the testimony of Waterloo, Iowa, Police Investigator Lynn Moller. The court admitted into evidence one exhibit, to-wit: Gov't Ex. 1, Application for Search Warrant, and Search Warrant, dated June 20, 2006, with attachments (7 pages).

The court finds the motion is fully submitted and ready for decision.

## *FACTUAL BACKGROUND*

Lynn Moller is an investigator with the Waterloo, Iowa, Police Department. He has thirty-two years of experience with the department. On the evening of June 18, 2006, Moller was telephoned and told to investigate a stabbing incident that had occurred earlier in the day. The victim of the stabbing was Pedro Fleming and the suspect was Charles Scott, the defendant in the present case.

Investigator Moller interviewed Fleming, and Fleming stated that Scott had, indeed, stabbed him. According to Fleming, he and Scott had gotten into several arguments that day, and during the last of these arguments, Scott stabbed him. The stabbing incident occurred while Scott and Fleming both were standing in the street in the 300 block of Mobile Street in Waterloo. Fleming stated Scott was carrying a walking cane that unscrewed into a knife and a sword, and Scott had used the knife to stab him.

Moller went to the 300 block of Mobile Street and found fresh blood in the street. Officers also spoke with two witnesses, Henry Teague and Alfred Oliver, who both had seen Scott earlier that day carrying a cane similar to the one described by Fleming. From their interviews with Fleming and other witnesses, the officers learned that the conflict started when Scott and Fleming exchanged words in front of Teague's residence in the 100 block of Mobile Street. Scott left and then returned, and more words were exchanged. Scott then went to the 300 block of Mobile Street, to the residence of his cousin, Willie Mack Jones. Fleming followed Scott to Jones's residence, and Fleming and Scott had the physical altercation in the street in front of the residence that resulted in Fleming being stabbed.

On the morning of June 20, 2006, Scott came to the Waterloo Police Department to speak with Moller. Scott admitted he had had a physical altercation with Fleming on June 18, 2006, and Fleming had come away from the altercation bleeding, but he denied that he had had a knife or had stabbed Fleming. Instead, he stated Fleming had approached

2

him with something in his hand, they had had a fight, and after the fight, he saw that Fleming had a gun.

Armed with all of this information, Moller obtained a warrant from a Black Hawk County, Iowa, District Court judge to search Scott's residence. The property sought in the warrant was a walking cane and bloody clothing. Moller submitted, in relevant part, the following affidavit in support of the search warrant:

> Sunday, June 18th, 2006, at 6:59PM, Waterloo Police were dispatched to 122 Mobile on report of a stabbing victim. On arrival, they learned the victim had been privately transported to Allen ER, and that the assault actually took place in the 300 blk of Mobile. In the 300 blk of Mobile was found fresh blood on the street.
>
> Investigation has determined that several people were socializing at 122 Mobile, two of which were Patro [sic] D. Fleming and Charles R. Scott. Fleming and Scott got into an argument, [and] Scott left and returned a short time later with a brass and wood walking cane.
>
> Fleming recalled previously seeing Scott with the cane at a local bar when Scott removed the lower portion and revealed a sword type blade, then removed another part revealing a shorter knife.
>
> More words were exchanged, and Scott left to a house in the 300 blk of Mobile. Fleming also immediately went to the house, where in the front yard, further confrontation developed between Fleming and Scott, and Scott then removed the portion which revealed the sword, and started stabbing Fleming.
>
> Fleming left and one of those from 122 Mobile then transported Fleming to Allen ER where he was admitting [sic] for treatment of his injuries.

Gov't Ex. 1.

The search warrant was executed on June 20, 2007. During the search, officers discovered the firearm that is the subject of the indictment in this case.

## *DISCUSSION*

Scott argues Moller deliberately or recklessly omitted certain information from his affidavit, and that if this information had been included in the affidavit, probable cause would have been lacking. He asks for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Under *Franks*, the court is required to hold a hearing "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" 438 U.S. at 155-56, 98 S. Ct. at 2676. Further,

> [i]n the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 156, 98 S. Ct. at 2676. The same principles are true for material that is omitted from (rather than included in) a warrant affidavit. *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004).

Under *Franks*, before a defendant is entitled to a hearing, he must make a *substantial* preliminary showing that either relevant information was omitted from the affidavit, or false information was included in the affidavit, either intentionally or with reckless disregard for the truth. The substantiality requirement is not easily met. *See United States v. Hiveley*, 61 F.3d 1358, 1360 (8th Cir. 1995); *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987). When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required. *United States v. Williams*, 477 F.3d 554, 557-58 (8th Cir. 2007) (citing *Franks*); *U.S. v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit

4

of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *Moore*, 129 F.3d at 992 (citing *Franks*, 438 U.S. at 171); *see Ketzeback*, *supra*;[1] *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986). The defendant also must show "that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998).

In the present case, Scott argues Moller should have included additional information in his affidavit. First, Scott notes officers spoke with several witnesses who were present in Jones's residence at the time of the altercation, and the witnesses stated they had not seen or heard anything. Moller had no obligation to include this information in the affidavit. Officers often speak with witnesses who have no information about reported criminal activity, and the fact that a witnesses does not see or hear what happened does not necessarily add to or detract from probable cause. Here, the evidence was inconsequential. Second, before the warrant was issued, Jones told officers he had not seen anything, and he knew nothing about the alleged stabbing. Again, this information does not detract from probable cause.[2]

---

[1] In *Ketzeback*, the court held:
> A facially valid warrant affidavit is constitutionally infirm if the defendant establishes the affidavit included deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Omissions likewise can vitiate a warrant if the defendant proves "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *United States v. Allen,* 297 F.3d 790, 795 (8th Cir. 2002).

*Ketzeback*, 358F.3d 987, 990 (8th Cir. 2004).

[2] Further, Moller testified he did not believe Jones. In fact, after the warrant was issued, Jones told officers he had, in fact, seen Scott with the walking cane before the stabbing incident; he witnessed the altercation; and he saw that Fleming was bleeding after the altercation.

5

Scott also points out Moller did not mention in his affidavit that Scott had told Moller he had not stabbed Fleming. Moller testified he did not believe Scott because Scott had admitted to having a physical altercation with Fleming, and also had admitted that after the altercation, he noticed Fleming was bleeding. Scott also complains Moller failed to include in his affidavit the fact that Fleming had an extensive criminal record, including four theft convictions, a burglary conviction, four assault convictions, and a conviction for a false report to law enforcement. Moller explained that he viewed Fleming as a victim and not an informant, and he did not believe this information was relevant to evaluating the credibility of a victim.

On this record, Scott has not made the requisite showing to warrant a *Franks* hearing. There is no evidence even to suggest that Moller deliberately or recklessly failed to include in his affidavit information that would have detracted from probable cause. To the contrary, Moller left a great deal of information out of the affidavit that would have bolstered probable cause. However, the affidavit is troubling nonetheless. It largely consists of conclusory statements by Moller,[3] with no reference to any evidence to support the conclusory statements. Moller reported there had been a stabbing, and then recited the events leading up to the stabbing and the details of the stabbing itself, but he only stated these facts had been "determined" from his "investigation." As noted by the court in *United States v. Casewell*, 436 F.3d 894 (8th Cir. 2006), "a magistrate would not have a substantial basis for concluding probable cause existed where the affidavit was a 'bare bones' recitation of conclusory statements by the affiant[.]" *Id.*, 436 F.3d at 897-98 (citing *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2332-33, 76 L. Ed. 2d 527 (1983)).

However, even if the affidavit did not provide a basis for a finding of probable cause to support the requested search, if the officers reasonably and in good faith relied on the

---

[3]The lone exception is the statement by Fleming to Moller that he recalled seeing Scott previously with a cane that could be dissembled into a sword and a knife.

6

Case 6:07-cr-02004-MWB   Document 17   Filed 05/08/07   Page 6 of 10

warrant in conducting the search, then evidence obtained from the search should not be suppressed. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Such reliance must be "objectively reasonable" -- in some situations the officer will have no reasonable grounds for believing the warrant is valid. As the United States Supreme Court noted in *Leon*:

> It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. [Citations omitted.]

*Id.*, 468 U.S. at 923 n.24, 104 S. Ct. at 3420 n.24.

Thus, if serious deficiencies exist either in the warrant application itself (*e.g.*, where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *id.*, 468 U.S. at 923, 104 S. Ct. at 3421 (citing *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)), or in the magistrate's probable cause determination, then the *Leon* good faith exception may not apply. As the *Leon* Court explained:

> Deference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. Second, the courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." A magistrate failing to "manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application" and who acts instead as "an adjunct

7

> law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search.
>
> Third, reviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect.

*Leon*, 468 U.S. at 914-15, 104 S. Ct. at 3416 (internal citations omitted). The Court noted that good faith on law enforcement's part in executing a warrant "is not enough," because "[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Leon*, 468 U.S. at 915 n.13, 104 S. Ct. at 3417 n.13 (citing *Beck v. Ohio*, 379 U.S. 89, 97, 85 S. Ct. 223, 228, 13 L. Ed. 2d 142 (1964), and *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 171, 4 L. Ed. 23 134 (1959)).

In the present case, the state district court judge was not misled by any false information, or by information Moller provided with a reckless disregard for the truth. The judge found the information in support of the search warrant application was adequate to provide probable cause to issue the search warrant. Even if the judge was wrong, under *Leon*, the exclusionary rule should not be applied because the officers executed the warrant in good faith reliance on its validity.

The Supreme Court has held that penalizing officers who act in good faith on a warrant for a magistrate's error in issuing the warrant "cannot logically contribute to the

deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921, 104 S. Ct. at 3419. The relevant question is whether law enforcement actions were objectively reasonable; *i.e.*, whether "the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Leon*, 468 U.S. at 918, 104 S. Ct. at 3418. The *Leon* Court noted:

> As we observed in *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S. Ct. 2357, 2365, 41 L. Ed. 2d 182 (1974), and reiterated in *United States v. Peltier*, 422 U.S. at 539, 95 S. Ct. at 2318:
>
>> "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."
>
> The *Peltier* Court continued, *id.* at 542, 95 S. Ct. at 2320:
>
>> "If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."

*Leon*, 468 U.S. at 919, 104 S. Ct. at 3418-19.

In the present case, the court finds the law enforcement officer did not have, and properly may not be charged with, knowledge of any deficiency in the search warrant sufficient to justify application of the exclusionary rule.
9

## *CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED** that Scott's motion to suppress be **denied**.

Any party who objects to this report and recommendation must serve and file specific, written objections by **May 16, 2007**. Any response to the objections must be served and filed by **May 21, 2007.**

**IMPORTANT NOTE:** Any party planning to lodge any objection to this report and recommendation must order a transcript of the hearing promptly, but not later than **May 11, 2007**, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>. If an attorney files an objection to this report and recommendation without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 8th day of May, 2007.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT