# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CHARLES SCOTT,<br><br>    Defendant. | No. CR07-2004-MWB<br><br>**ORDER CONCERNING MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *B. Objections To Report and Recommendation* . . . . . . . . . . . . . . . . . . 6
      *1.    Franks Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      *2.    Leon Good Faith* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On February 28, 2007, an indictment was returned against defendant Charles Scott charging him with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On April 5, 2007, defendant Scott filed a motion to suppress and application for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In his motion, defendant Scott seeks to suppress evidence found during the execution of a search warrant that was issued for his residence. Defendant Scott argues that the law enforcement officer who prepared the search warrant application for his residence deliberately or recklessly omitted certain information from his affidavit, and that, absent those omissions, the search warrant application was not supported by probable cause.

Defendant Scott's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that defendant Scott's motion to suppress be denied. Judge Zoss concluded that defendant Scott had not made the requisite showing to warrant a *Franks* hearing. Judge Zoss further concluded that there was no evidence to suggest that the law enforcement officer seeking the search warrant for defendant Scott's residence deliberately or recklessly failed to include in his affidavit information that would have detracted from probable cause. Judge Zoss also concluded that even if the search warrant affidavit's content was insufficient to establish probable cause for a search of defendant Scott's residence, the search is lawful under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). Therefore, Judge Zoss recommended that defendant Scott's motion to suppress be denied. Defendant Scott has filed objections to Judge Zoss's Report and Recommendation. The court,

2

therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Scott's motion to suppress.

### *B. Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> Lynn Moller is an investigator with the Waterloo, Iowa, Police Department. He has thirty-two years of experience with the department. On the evening of June 18, 2006, Moller was telephoned and told to investigate a stabbing incident that had occurred earlier in the day. The victim of the stabbing was Pedro Fleming and the suspect was Charles Scott, the defendant in the present case.
>
> Investigator Moller interviewed Fleming, and Fleming stated that Scott had, indeed, stabbed him. According to Fleming, he and Scott had gotten into several arguments that day, and during the last of these arguments, Scott stabbed him. The stabbing incident occurred while Scott and Fleming both were standing in the street in the 300 block of Mobile Street in Waterloo. Fleming stated Scott was carrying a walking cane that unscrewed into a knife and a sword, and Scott had used the knife to stab him.
>
> Moller went to the 300 block of Mobile Street and found fresh blood in the street. Officers also spoke with two witnesses, Henry Teague and Alfred Oliver, who both had seen Scott earlier that day carrying a cane similar to the one described by Fleming. From their interviews with Fleming and other witnesses, the officers learned that the conflict started when Scott and Fleming exchanged words in front of Teague's residence in the 100 block of Mobile Street. Scott left and then returned, and more words were exchanged. Scott then went to the 300 block of Mobile Street, to the residence

3

of his cousin, Willie Mack Jones. Fleming followed Scott to Jones's residence, and Fleming and Scott had the physical altercation in the street in front of the residence that resulted in Fleming being stabbed.

On the morning of June 20, 2006, Scott came to the Waterloo Police Department to speak with Moller. Scott admitted he had had a physical altercation with Fleming on June 18, 2006, and Fleming had come away from the altercation bleeding, but he denied that he had had a knife or had stabbed Fleming. Instead, he stated Fleming had approached him with something in his hand, they had had a fight, and after the fight, he saw that Fleming had a gun.

Armed with all of this information, Moller obtained a warrant from a Black Hawk County, Iowa, District Court judge to search Scott's residence. The property sought in the warrant was a walking cane and bloody clothing. Moller submitted, in relevant part, the following affidavit in support of the search warrant:

> Sunday, June 18th, 2006, at 6:59PM, Waterloo Police were dispatched to 122 Mobile on report of a stabbing victim. On arrival, they learned the victim had been privately transported to Allen ER, and that the assault actually took place in the 300 blk of Mobile. In the 300 blk of Mobile was found fresh blood on the street.
>
> Investigation has determined that several people were socializing at 122 Mobile, two of which were Patro [sic] D. Fleming and Charles R. Scott. Fleming and Scott got into an argument, [and] Scott left and returned a short time later with a brass and wood walking cane.
>
> Fleming recalled previously seeing Scott with the cane at a local bar when Scott removed the lower

4

> > portion and revealed a sword type blade, then removed another part revealing a shorter knife.
> >
> > More words were exchanged, and Scott left to a house in the 300 blk of Mobile. Fleming also immediately went to the house, where in the front yard, further confrontation developed between Fleming and Scott, and Scott then removed the portion which revealed the sword, and started stabbing Fleming.
> >
> > Fleming left and one of those from 122 Mobile then transported Fleming to Allen ER where he was admitting [sic] for treatment of his injuries.
>
> Gov't Ex. 1.
>
> > The search warrant was executed on June 20, 2007. During the search, officers discovered the firearm that is the subject of the indictment in this case.

Report and Recommendation at pp. 2-3. Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## *II. LEGAL ANALYSIS*

### *A. Standard Of Review*

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

5

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). As noted above, defendant Scott has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Scott's motion to suppress.

### *B. Objections To Report and Recommendation*
#### *1. Franks Hearing*

Defendant Scott first objects to Judge Zoss's conclusion that defendant Scott had not made the requisite showing to warrant a *Franks* hearing. Defendant Scott asserts that Investigator Moller omitted facts he gathered during the course of his investigation in

6

reckless disregard of whether such omissions made his affidavit misleading. Defendant Scott, however, does not identify with any particularity what facts he believes Investigator Moller omitted nor how Judge Zoss erred in his analysis regarding the factual omissions. In *Howard v. Secretary of Health and Human Servs.,* 932 F.2d 505 (6th Cir.1991), the Sixth Circuit Court of Appeals observed that general, non-specific objections are insufficient:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error. We should not permit appellants to do the same to the district court reviewing the magistrate's report.

*Id.* at 509; *accord Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988) ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review."); *Goney v. Clark*, 749 F.2d 5, 7 n.1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review"); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (failure to file specific objections to particular conclusions in Magistrate Judge's Report waives further review); *Banta Corp. v. Hunter Publ'g Ltd. Partnership*, 915 F. Supp. 80, 81 (E.D. Wis. 1995) ("De novo review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made."). Defendant Scott has made only a

7

general objection with regard to the *Franks* issue addressed by Judge Zoss in his Report and Recommendation. Therefore, the court denies defendant Scott's objection on the ground that defendant Scott has failed to state his objection with the requisite particularity. Nonetheless, out of an abundance of caution, the court will attempt to identify those portions of the Report and Recommendation to which defendant Scott appears to object.

In his brief in support of his motion to suppress, defendant Scott argued that Investigator Moller should have included the following additional information in his affidavit: (1) that law enforcement officers spoke with several witnesses who were present in Jones's residence at the time of the altercation, and the witnesses stated they had not seen or heard anything; (2) that before the warrant was issued, Willie Mack Jones told law enforcement officers he had not seen anything, and he knew nothing about the alleged stabbing; (3) that defendant Scott told Investigator Moller he had not stabbed the victim, Fleming; and, (4) that Fleming had an extensive criminal record, including four theft convictions, a burglary conviction, four assault convictions, and a conviction for a false report to law enforcement. Judge Zoss concluded that none of these materials would have detracted from probable cause, and their omission from Investigator Moller's affidavit was not done with the intent to make, or in reckless disregard of whether they make, his affidavit misleading. The court concurs in that conclusion.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court set out a limited exception to the presumptive validity of an affidavit supporting a search warrant application. Under the *Franks* decision, if the government intentionally includes material false statements in its warrant affidavits, or includes material false statements with reckless disregard for the truth, that is the legal equivalent of intentional falsehood, the reviewing court must set aside the false statements and then review the remaining portions of the warrant application to determine if what remains is sufficient to establish probable

8

cause. *Id.* at 156; *see United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007); *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006); *United States v. Sandoval-Rodriguez*, 452 F.3d 984, 988 (8th Cir. 2006); *United States v. Pucket*, 466 F.3d 626, 629 (8th Cir. 2006); *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir.2006); *United States v. Olvey*, 437 F.3d 804, 809 (8th Cir. 2006); *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001); *United States v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1115 (2006); *United States v. Searcy*, 181 F.3d 975, 980 (8th Cir. 1999); *United States v. Ozar*, 50 F.3d 1440, 1443 (8th Cir. 1995); *United States v. Clapp*, 46 F.3d 795, 799 (8th Cir. 1995); *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986); *United States v. Garcia*, 785 F.2d 214, 222 (8th Cir.), *cert. denied*, 475 U.S. 1143 (1986). Mere negligence or an innocent mistake are insufficient, by themselves, to void a warrant. *See Franks*, 438 U.S. at 171; *Williams*, 477 F.3d at 557; *Davis*, 471 F.3d at 946; *Puckett*, 466 F.3d at 629; *Carpenter*, 422 F.3d at 745; *Clapp*, 46 F.3d at 799.

The Supreme Court instructed that an evidentiary hearing is not warranted unless defendant makes the following showing:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these

9

> requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Franks*, 438 U.S. at 171. The Eighth Circuit Court of Appeals has further instructed that:

> While clear proof of these elements is not required at the stage at which the defendant is demonstrating an entitlement to an evidentiary hearing, *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir. 1989), the defendant still must make a "substantial preliminary showing" comprised of specific allegations along with supporting affidavits or similarly reliable statements. *Cf. Franks*, 438 U.S. at 171, 98 S. Ct. 2674 (describing the showing requirements for allegedly false statements in warrant affidavits). Because "[t]here is . . . a presumption of validity with respect to the affidavit supporting the search warrant[,t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. The substantiality requirement is not lightly met. *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987).

*Williams*, 477 F.3d at 557-58.

The Eighth Circuit Court of Appeals has also instructed that omissions in a supporting affidavit can vitiate a search warrant:

> Omissions likewise can vitiate a warrant if the defendant proves "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *United States v. Allen,* 297 F.3d 790, 795 (8th Cir. 2002).

10

*United States v. Ketzeback*, 358F.3d 987, 990 (8th Cir. 2004). Applying these standards to the facts of this case, the court concludes that while Investigator Moller had intentionally omitted information from his affidavit, this finding by itself is insufficient to vitiate the warrant because "every factual omission is intentional insofar as the omission is made knowingly." *Id.* at 990. The inquiry must proceed, then, to the further question whether Investigator Moller omitted the facts with the intent to mislead or in reckless disregard of the omissions' misleading effect. *Id.*; *Reivich*, 793 F.2d at 961. Upon de novo review of the record, the court concludes that there is no evidence in the record to suggest that Investigator Moller omitted the facts with the intent to mislead or in reckless disregard of the omissions' possibly misleading effect. Rather, the court concludes that Investigator Moller omitted the facts because he deemed them irrelevant. Indeed, Investigator Moller testified as much at the evidentiary hearing:

> Q. When you applied for the search warrant, did you leave out any information because you thought if you put it in there, you might not have probable cause to obtain the search warrant?
>
> A. No.
>
> Q. Why, for example, would you leave out information that certain people said they had seen nothing?
>
> A. It's not pertinent to the case--or to the search warrant. You're putting in information to a search warrant to give to a judge because you have a certain set of circumstances to believe that some evidence may be at a certain location. Somebody saying "I saw nothing" does not fill that bill.
>
> Q. Would you normally include a victim's criminal history when you obtain a search warrant, Investigator Moller?

11

> A. I never have.
>
> Q. Did you leave anything out of that application or affidavit in an attempt to mislead the judge concerning the information you had for the search warrant?
>
> A. No, I did not.

Hearing Transcript at 15.

Given the nature of the crime being investigated, a stabbing, the court finds Investigator Moller's explanation rational. It must be stressed that the investigating officers found fresh blood at the scene of the crime and the victim in this case, Fleming, was able to identify his attacker, Scott, by name. Recognizing the evidence the police had already obtained regarding the alleged stabbing, the fact that a number of possible witnesses in the vicinity of the crime scene professed not to have seen or heard anything was inconsequential information in the probable cause calculation. Moreover, to conclude otherwise would require law enforcement officers to include in each warrant application notations as to all interviews taken during the pendency of the investigation, even though the interviewees were unable to provide any pertinent information. Similarly, the court cannot fault Investigator Moller for not making reference to Fleming's criminal record in his affidavit since Fleming was the victim of the stabbing being investigated and was not acting as a confidential informant in this matter. Having concluded that Investigator Moller did not omit the facts with the intent to mislead or in reckless disregard of the omissions' misleading effect, the court thus concludes that defendant Scott has not satisfied the second step of the *Franks* test. Having reached this conclusion, the court need not address the final step in the *Franks* inquiry: whether Investigator Moller's affidavit would not have been sufficient to support a finding of probable cause if the omitted facts had been included. *See Ketzeback*, 358 F.3d at 990; *United States v. Allen*, 297 F.3d 790, 795 (8th

12

Cir. 2002); *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993); *Reivich*, 793 F.2d at 961. Nonetheless, because defendant Scott has specifically objected to Judge Zoss's finding on this point, the court will undertake this analysis.

The seminal case of *Illinois v. Gates*, 462 U.S. 213 (1983), provides the standard an issuing court must follow in determining whether probable cause supports a search warrant application and, consequently, the duty of the reviewing court when considering the propriety of that determination:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238.

The question presented on review of an issuing judicial officer's determination is not whether the reviewing court would have issued the warrant based on the affidavit as presented, but whether the court which did issue the warrant had a "'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-239 (citation omitted). Thus, a reviewing court does not conduct a de novo review of the issuing judge's determination, but must instead afford it great deference. *Id.* at 236. As the United States Supreme Court explained in *Gates*:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." [*Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 590, 21 L.Ed. 2d 637 (1969) ]. "A grudging or negative attitude toward warrants," [*United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 745-46, 13 L.Ed. 2d 684

13

> (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.*, at 109, 85 S. Ct. at 746.

*Gates*, 462 U.S. at 236; *see United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006); *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995); *see also United States v. Brown*, 461 F.3d 1062, 1073 (8th Cir. 2006); *United States v. Goff*, 449 F.3d 884, 886 (8th Cir. 2006); *United States v. Stevens*, 439 F.3d 983, 997-98 (8th Cir. 2006); *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006).

The Eighth Circuit Court of Appeals has weighed in on this topic as well, observing that:

> Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched.

*Gladney*, 48 F.3d at 312 (quoting *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir.1994)); *see also Caswell*, 436 F.3d at 897 (noting that "the magistrate should 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Gates*, 462 U.S. at 238); *United States v. Wells*, 223 F.3d 835, 838 (8th Cir. 2000) ("The evidence as a whole must provide a substantial basis for a finding of probable cause to support the issuance of a search warrant."); *United States v. Johnson*, 219 F.3d 790, 790 (8th Cir. 2000) ("Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit.") (quoting *United States v. Tellez*, 217 F.3d 547 (8th Cir. 2000) (in turn quoting *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999)

14

(internal quotation marks omitted)). Equally on point is the observation of Justice (then Judge) Kennedy:

> For probable cause to exist, a magistrate need not determine that the evidence sought is in fact on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

*United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985), *cert. denied*, 474 U.S. 847 (1985) (emphasis added in part) (citations omitted). Where, as here, the issuing judge relied solely on the affidavit presented to him, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *Gladney*, 48 F.3d at 312 (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), *cert. denied*, 459 U.S. 1201 (1983)).

Upon review of the record and Judge Zoss's Report and Recommendation, the court concludes that Judge Zoss correctly concluded that there was a substantial basis to support the state judge's finding of probable cause to search defendant Scott's residence. The court recognizes that the Eighth Circuit Court of Appeals has held that "punctilious paragraph-by-paragraph dissection of the supporting affidavit" is not the appropriate standard of review. *United States v. Townsley*, 843 F.2d 1070, 1076 (8th Cir. 1988); *see United States v. Leisure*, 844 F.3d 1347, 1354 (8th Cir. 1988) (declining to "undertake a piecemeal dismemberment of the various paragraphs of the affidavit without attention to its force as a whole."). Rather, the court acknowledges that a determination of probable cause depends on a reading of the affidavit as a whole. *Gates*, 462 U.S. at 237. Here, as Judge Zoss noted in his Report and Recommendation, Investigator Moller's affidavit is troubling because it consists, in significant part, of conclusory statements by Moller, with

15

scant reference to any evidence to support his conclusory statements. The Eighth Circuit Court of Appeals has observed that "a magistrate would not have a substantial basis for concluding probable cause existed where the affidavit was a 'bare bones' recitation of conclusory statements by the affiant[.]" *United States v. Casewell*, 436 F.3d 894, 897-98 (8th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). Nonetheless, upon giving due deference to the decision of the warrant-issuing judge and based upon a consideration of the totality of the circumstances, the court finds that the combination of the victim's first-hand account of the assault by Scott which was corroborated in part by the fresh blood on the scene of the assault, with the establishment of defendant Scott's residence and evidence indicating that Scott was currently at his residence, provided probable cause for the search warrant in question to be issued. *See United States v. Hopkins*, No. 05-2197, 2007 WL 990263 at *3 (3rd Cir. Apr. 4, 2007) (unpublished decision) (noting that "the evidence sought, a weapon used in an assault, is of the type typically stored in a perpetrator's residence."); *cf. United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975) (noting that people who own pistols generally keep them at home or on their persons). The court, therefore, overrules defendant Scott's objections to those portions of the Report and Recommendation containing Judge Zoss's *Franks* analysis.

### 2. *Leon Good Faith*

Defendant Scott also objects to Judge Zoss's conclusion that even if the search warrant for defendant Scott's residence was not supported by probable cause, the search is lawful under the good faith exception of *Leon*, 468 U.S. at 922-23. The court concludes that even if the search warrant application here was deficient, the search is lawful under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the United States Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the

16

executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause and technical sufficiency. *Id*. at 922-23. "[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) (quoting *Leon*, 468 U.S. at 926). The court finds no evidence in the record to suggest that the state court judge did not remain neutral and detached when making his probable cause determination. No evidence suggests that the state court judge "wholly abandoned his judicial role." *See Leon*, 468 U.S. at 923 (stating that suppression remains an appropriate remedy when the issuing judge wholly abandons his judicial role). In addition, because investigator Moller knew that the state judge had found the search warrant affidavit sufficient, the court concludes that his reliance upon the issued search warrant was reasonable. Therefore, the court also overrules defendant Scott's objection as to Judge Zoss's *Leon* analysis.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **denies** defendant Scott's motion to suppress (#10).

**IT IS SO ORDERED.**

**DATED** this 7th day of June, 2007.

                                                                                                 *Mark W. Bennett*
                                                                                     _____
                                                                                     MARK W. BENNETT
                                                                                     U. S. DISTRICT COURT JUDGE
                                                                                     NORTHERN DISTRICT OF IOWA